The next case of the afternoon, Consociate v. Daniels, 4090294, for the appellant, Mr. Craven, and for the appellee, Mr. Kiley, and Mr. Sudeja, Sudejla, Sudejla. Thank you. You may proceed. Thank you, Your Honor. May it please support the counsel. This case began back in June of 2007 as a rather routine defamation case. Yeah, those are all routine cases. Well, okay, I'll try. In our initial motion to dismiss in this case, we advised the court and advised the plaintiffs that the legislature had enacted unanimously the Citizen Participation Act, brought that act to the court's attention. It had not yet been signed by the governor, but we felt it important to bring it to the court and counsel's attention, so we did. After the initial motion to dismiss was briefed, we appeared before Judge Weber on that motion, and on his motion, he wins, we then briefed the application of the Citizen Participation Act to this case. And Judge Weber, after briefing on that issue, determined that the Citizen Participation Act might be applicable. He found that it was primarily procedural in nature and might be applied to this case, but for Section 25, which is the attorney's fees provision. As we prepared then to proceed to determine if the Citizen Participation Act would apply, the plaintiffs filed a voluntary motion to dismiss, which, for the first time in 25 years, I opposed, on the theory that the provisions of the Citizen Participation Act should prevail over the provisions of the Code of Civil Procedure, in that the Citizen Participation Act would allow for a dispositive motion under that act to have this matter dismissed with prejudice, relieving my clients of the burden of waiting for that year to run before they are relieved of any anxiety about this case or liability in this case. We have before the court today the question of the propriety of granting that voluntary motion to dismiss, as opposed to proceeding with the hearing under the motion under the Citizen Participation Act. And we also have the court's determination that Section 25 of the Act would not apply as it constitutes not a procedural but a substantive change in the law. I recognize that the trial court has great discretion to grant a motion to voluntarily dismiss under 2109 of the Code of Civil Procedure, but to grant a motion to voluntarily dismiss in a case in which the question of the application of the Citizen Participation Act applies simply guts the Citizen Participation Act. So if a developer wants to sue the neighbor who's raising heck about the annexation so that we can build Walmart wherever we're going to build Walmart, the neighbor shows up at a zoning meeting, says whatever the neighbor says, here comes defamation action to shut up the neighbor, that's a typical slap or an anti-slap situation. To allow that litigation to be filed and to proceed through the motion stage and then when we're ready to argue the motion to dismiss under the Citizen Participation Act, to pull the protection of the Act away from that individual citizen, or in this case Mr. Daniels, simply defeats the purpose of the Act. We have effectively gutted the protections of the Act and the purposes of the Act, which are to dispose of litigation quickly and efficiently and economically. There's a 90-day limit under the Act. And it also defeats the purpose of allowing that citizen to recover attorney's fees. So now we have developer, we have plaintiff able to file a defamation action or some other action related to the defendant's petitioning activities. The citizen has to incur the cost of defense, has to find a lawyer, incur the cost of litigation. And then before the motion under the Act can be determined, the protections of the Act are simply pulled away from them. I think under the circumstances of this case and under the circumstances of a case in which a motion under the Citizen Participation Act has been filed, that the discretion of the trial court to grant a motion to dismiss has to be limited in order that we can give some effect to the purposes of the Citizen Participation Act. So I would urge this court to find that the discretion of the trial court was limited upon the filing of the motion under the Citizen Participation Act and reverse the determination that the motion to voluntarily dismiss should have been granted. I have a less esoteric question. When a motion to dismiss is filed and granted with leave to refile within one year's period of time, is that a final order? It doesn't dispose of the case. The case is still hanging open for 365 days, right? I believe it is, but I have to admit I don't know the answer to that question. I haven't thought about it. There's a 304A finding, but that still only applies to final orders. I thought you said it was a less esoteric question. I honestly have not looked at that question. I'd be glad to do so, but I don't know that. The other issue that's raised in this litigation is whether Section 25 of the Citizen Participation Act, dealing with attorney's fees, should be applied to this case. The trial court found that the Act would apply to this case with the exception of Section 25. We pointed this court to the Calinan decision involving the amendments to the Freedom of Information Act in 2004. In Calinan, the question was, would the amended provisions of the Act relating to attorney's fees, which substantially changed the application of the fee provision in the Act, would those provisions apply to a determination of fees in the Calinan case? The provision became applicable, became effective during the course of the litigation. Some of the fees were incurred before the Act became effective. Some of the fees became effective. Some of the fees were incurred after the Act became effective. We point the court, as I said, to the Calinan case and the analysis that it applied in finding that the amendments to the Act would apply. Finding that substantial liability in this case was incurred after the effective date of the Act. As I indicated, the Act had been passed, but it had not been signed by the governor. It became effective upon his signature, and there were substantial fees that were incurred after the application of the Act. As in Calinan, all counsel were aware of the Act. All counsel were aware of the amendments to the Act. All counsel were aware of the ramifications of the amendment to the Act. As in Calinan, these plaintiffs were aware of the Act, were aware of the potential liability under the Act, and simply chose to proceed, thereby forcing Mr. Daniels to proceed to defend himself. We think the Calinan case is dispositive of this provision, and would likewise ask the court to reverse that determination and find that Section 25 of the Act does apply. I'll think about the other questions. I'm going to proceed. May it please the Court, counsel. My name is Jack Kiley. I'll be addressing the issues of the involuntary dismissal as well as briefly touching on the applicability of the 90-day rule with respect to the motion being heard for 90 days. My colleague Chris Dill will be discussing the attorney's fees provision as well as the public policy issue raised in the appellant's brief. Essentially what we have here, defendants are really asking the court to develop a hardline rule establishing a new exception to the 1009 involuntary dismissal statute in instances where there is a potentially dispositive motion filed prior to a voluntary dismissal filing by the plaintiff. The trial court's discretion to grant a voluntary dismissal without considering a potentially dispositive motion will not be reversed unless there is a clear abuse of discretion. To show an abuse of discretion, the defendant must show that no reasonable person could take the view adopted by the lower court. Now, listening to counsel's argument, I fail to recognize any argument either made in the brief or during oral arguments that indicates any abuse by the trial court that's found within the record. Essentially what we have here is the argument that so long as there is a potentially dispositive motion filed and then there is a voluntary dismissal filed subsequent to that, that's inherently an abuse of discretion. I think that's counterintuitive to what 1009 currently states as well as what the statutes or what the case law decisions have shown in the past. The courts are afforded great discretion in deciding these motions and there's been simply no suggestion in the record that there is an abuse of discretion whatsoever. It's very important to note in this case, as counsel points out, that the CPA was not even a valid law at the time the plaintiff filed their complaint. That's important for several reasons, not the least of which is in the appellant's brief. They cite the California law that found that the court should have ruled on dispositive motions prior to ruling on the plaintiff's voluntary dismissal. Well, in each of those cases, the slap back was already in effect at the time the plaintiffs filed their complaint. The plaintiffs here enjoyed no such benefit. At the time they decided to file their complaint, the CPA was unknown to them. The effects of the CPA were unknown to them. Upon the CPA taking effect in August of 2007, at that time the plaintiffs were met with an increased burden, one higher than they would actually be required to prove at trial. At trial, in order to prove their defamation claim, they would be required only to show by preponderance of the evidence that they were defamed per se by the defendants. However, under the CPA, at the pretrial stage, they were required to show by clear and convincing evidence that they would prevail at trial. So, at that point, there was a reevaluation that needed to be made. It's very important to note also, with the timing of this whole thing, that there was no determination made. Even after the defendants had filed their motion of dismissal pursuant to the CPA, no determination had been made whether the CPA applied to this act. The court found that it may apply, and that was only after several months. The argument at that point was going back and forth as to whether the CPA was procedural or substantive. So, there was never any decision made by the trial court as to whether or not the facts of this case actually did apply to the CPA. In support of our argument, we decided a Bochenten case, which is a Supreme Court case. The Supreme Court found in that case that the trial court did not use its discretion in granting a voluntary dismissal. In that case, there had been five years of litigation. The record was replete with delays and the plaintiff's missing deadlines and court order deadlines on case management orders. And the Supreme Court found in that case that the trial court did not abuse its discretion. And the Supreme Court actually sided with the appellate court in that decision and said, what the appellant proposes is a revision of the Gibellina rule to require determination of the defense motion, rather than making the court's authority to do so discretionary. The rule intended to afford discretion to the court, not a mandate. That's exactly what the defendants are proposing here. It's that this court mandate that a trial court grant a potentially dispositive motion, or hear a potentially dispositive motion prior to granting a voluntary dismissal. That would strip the trial court of their discretion under 10-009. It also would create or carve out an exception in 10-009 where none exists. And lastly, it would essentially create legislative intent where none exists, citing that the CPA had intended that any potentially dispositive motion be heard prior to. Well, Illinois legislature did have the advantage of modeling its CPA statutes after California. It elected not to do so. In some ways, Illinois is actually more stringent. At the motion to strike stage in California, the defendant must only show a probability of success. The plaintiff must show only a probability of success. In Illinois, there has to be clear and convincing evidence that the plaintiff would succeed. So the burden of proof is actually higher in Illinois. Secondly, if a slap action is brought by a defendant in California, and that's found to be frivolous, the plaintiff is actually entitled to attorney's fees. So you can see a departure with our legislature from California, even though we had the benefit of California case law in guiding our statutory construction. So I don't think that the California case law and statute can substitute for a lack of facts we have in our record or a lack of evidence on our record to show an abuse of discretion on the trial court here. And that's what this comes down to, is whether or not the trial court abuses discretion in granting the voluntary dismissal under 10-009. Again, there's just no facts to support such a conclusion. With respect to the cases cited by the defendant, again, those are all California cases, each of which had a valid slap act in place at the time the plaintiff filed the claim. So there's a glaring distinction between those California cases and the situation we have at hand. Secondly, as far as the statute, the statutes are different. It shows a clear departure by our legislature from California, as I pointed out. Unless there's any questions on that issue, I'll move on to the second point. We do cite in our brief that voluntary dismissal is a final and appealable order. I mention that only because in the trial court's phase of this action, the 90-day rule that the court shall hear a motion within 90 days of being filed was never an issue. That was not brought up at the trial court stage. That was not brought up until this appeal was filed. Therefore, that issue has been waived. The defendants were complicit, and in moving things along as they did, there was never any disagreement to moving along or continuing motions until later dates. Causes were continued by agreement. The record reflects that the defendant itself actually moved to reschedule some dates. So to rely on that provision of the statute now, after that issue has been clearly waived, at the trial court stage is, I think, inappropriate. It appears that that 90-day language is being leveraged at this point, although it was never an issue at the trial court stage. It was never even mentioned. The motion dismissed was not noticed up at any time within the 90-day period, and so we think that is a moot issue as well. Barring any questions, I would defer to my colleague, Mr. Cedillo, on the issue of attorney's fees and public policy. Thank you. May it please the Court, Counsel. I'll attempt to keep my remarks brief. As the record reflects, the alleged defamation occurred in June of 2006 and April of 2007. Our complaint was filed on June 4, 2007. This Citizens Participation Act became effective on August 28, 2007, well after the alleged defamation occurred and well after our complaint was filed. To kind of recap what's in our brief, the attorney's fee provision should not be applied retroactively to this case for several reasons. First, the prospective application of the statute is preferred, and this is found, citations are found in our brief. The Cooper citation would be the one on this point. Secondly, in the Landgraf case, they set out a test. The first element is you look to the legislative intent of the statute. In this case, it says it will become effective upon becoming law, and that would have been August 28, 2007. Further, if the legislative intent is not set forth in the statute, it moves on to a little bit bigger of a test. In this case, the facts meet the Landgraf and Allegres test. Specifically, they meet this because the mandatory attorney's fees increase a party's liability for past conduct. Additionally, it imposes a new duty, which is the mandatory payment of attorney's fees. Further, the retroactive application of this act, specifically the attorney's fees section, will cause an inequitable consequence to our appellee here. We filed a complaint not knowing that this act was going to be in place. It had a mandatory attorney's fees section, and now we're being stuck with that, and that would just not be an equitable consequence for our client. Further, the appellants rely upon Callahan. In Callahan, there's a difference. In Callahan, the Freedom of Information Act had a provision for attorney's fees. Everyone was on notice that they could be subject to attorney's fees. In our case, there's no amendment to an act. This is a new law. It's a brand new law. There was no liability for attorney's fees before filing a defamation action, and this act makes there be liability, and that's a substantial burden upon our client, and actually is why this law cannot be retroactively applicable as to the attorney's fees again. Another case we cited on this specific issue would have been the Board of Education case, which essentially says that if an act is a new law altogether, it's not the amendment of an existing law, it will substantially interfere with our client's right. As to our attorney's fee argument, the rest of it is outlined in the brief, and I would be happy to answer any questions about it if anyone has any. Moving on to the public policy part of this, in our case, this act was never determined to apply to our facts. The court rule that may apply, as the appellant's attorney has said. This is a very limited issue, too. There's not a lot of people who have very big interests in it, besides the parties sitting in this courtroom today. We're talking about should the attorney's fees portion of this act apply to a lawsuit that was filed before the effective date of the act. And to my knowledge, we may be the only current case pending in Illinois where that's an issue. So this isn't something that has an effect on the majority of the population at all. According to the facts in this case, I don't believe there's any harm to public policy by having this attorney's fee provision not apply retroactively. To close, this matter was voluntarily dismissed, and absent a finding of abuse of discretion in granting the voluntary dismissal, the issue of retroactive attorney's fees is moved. However, should the issue arise for the reasons set forth today and in our brief, I would suggest the law doesn't favor the retroactive application of attorney's fee provision in this act. And if there's no questions, that would be all I have. No questions. Rebuttal, Mr. Craven? Although I should move it. The Calinam case sets out three, a tripartite test to determine if an amendment to a statute should be applied retroactively. Did liability exist prior to the enactment of the legislation? We've cited cases in our brief that under the Noor-Pennington Doctrine, a common law doctrine on which the Citizen Participation Act is based, attorney's fees may be awarded. Yes, this changes the standards, just as the application of the 2004 amendments under the Freedom of Information Act changed the standard and the burden of proof relating to the application of attorney's fees. Did the conduct giving rise to possible liability occur before the effective date? Yes, the complaint was filed before the effective date. Most of this litigation occurred after the effective date, and after the plaintiffs had been put on notice that the statute applied. And the third element is, could the party against whom expenses were sought avoid or limit its liability? Yes. They could have dismissed this action in August of 2007 when they were put on notice that the statute had been signed by the governor and was in effect, and could, using the language of Caledon, could subject them to liability. So the elements of Caledon are met, and the statute should be applied, Section 25 should be applied retroactively. Mr. Craven, do you agree that we're only going to reach that question if we reverse the trial court with respect to its ruling on the voluntary motion to dismiss? No. Okay, why? I think they're separate and individual questions. Well, they may be, but if we affirm the trial court's voluntary dismissal, why would we reach that issue? Essentially, would we be issuing an advisory opinion? No, because upon remit, I would ask, under those circumstances, that if you reverse the finding on the voluntary dismissal, that you remand this matter to the reading. My question to you was, if we affirm the trial court on the voluntary dismissal, why would we even reach the issue? I'm sorry. I was flipping the scenario. I agree. But let's suppose that we agree with you that what happened here would have the effect of gutting the protection of SLAP. I mean, what is it about this act, when it doesn't say anything about it, that somehow trumps what is a discretionary act of the court in saying, okay, the litigation is not going to go forward, and the litigation is going to cost both sides, and the person who brought the litigation doesn't want to go forward. There's a motion that might be dispositive, but in the inherent use of my discretion, I'm going to dismiss. The language in both the preamble of the act and in Section 50. It shouldn't happen. It shouldn't happen. But who's to correct that? The court. Well, how about the people across the street? I think the people across the street. You think they already did it? I think they already did it. You think they thought about that? I think they thought about it. Clearly, the language in the act assumes, perhaps without saying, that actions under this statute will be disposed of promptly, will be disposed of finally, and will be disposed of economically. Well, it would be disposed of promptly and economically if they had taken what you said would have been good advice, and as soon as on August 28th, they would have said, we're going to dismiss. But by doing it the way they did it. It costs. It costs. Right. I agree with my colleague that there aren't a whole lot of people in this world who are worried about this issue. My client happens to be one of them, since he has been burdened with the costs resulting from their conduct. It's not asking a lot to impose a rule, to give meaning to the Citizen Participation Act, to limit the discretion of a court to voluntarily dismiss an action when a motion under the CPA is pending. Thank you. I take this matter under advice. Thank you.